IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBBY ROBERSON, Personal
Representative of the ESTATE OF
DOROTHY M. ROBERSON, a Citizen of
the State of New Mexico, and
ROB-O-CO, Inc., a New Mexico
Corporation,
               Plaintiffs,

v.                                                       Civ. No. 09-795 JCH/WDS

LEE B. FARKAS, a Citizen of the State of
Florida,
               Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's *Motion to Set Aside Clerk's Entry of Default* [Doc. 23][1] and Plaintiffs' *Motion for Entry of Default Judgment on Liability* [Doc. 43]. The Court having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendant's motion is not well-taken and should be DENIED and that Plaintiffs' motion is well-taken and should be GRANTED.

## BACKGROUND

---

[1] Defendant's motion was fully briefed as of December 15, 2009. *See* Notice of Briefing Complete by Lee B. Farkas [Doc. 40]. Nonetheless, on July 16, 2010, Defendant filed an *Amended Motion to Set Aside Default* [Doc. 59]. On the basis of this Amended Motion, the Court entered a text-only order on the docket noting that the initial Motion to Set Aside Clerks' Entry of Default was moot [Doc. 62]. However, upon closer inspection, it is clear that Defendant's Amended Motion is more in the nature of a surreply, which requires leave of the Court to file. Defendant's initial motion was fully briefed, and is ripe for decision. *See* D.N.M. LR-Civ. 7.4. The Court notes that Defendant's Amended Motion raises many of the same issues already addressed in his earlier, fully briefed, motion, and the new issues raised involve information already in his possession at the time he filed his initial motion and his response to Plaintiff's Motion for Entry of Default Judgment. These issues should have been raised in earlier briefing. Thus, the Court will not address Defendant's Amended Motion.

This case arises from a long-standing business and personal relationship between Defendant and Dorothy Roberson. Plaintiff Robby Roberson, a citizen of New Mexico, is the Personal Representative of the Estate of Dorothy Roberson. During her lifetime, Ms. Roberson was a citizen of New Mexico and was the sole shareholder of Plaintiff ROB-O-CO, Inc. ("ROC"). Her estate is now ROC's sole shareholder. Plaintiffs contend that Defendant failed to honor his guarantee of payment obligations owed to Ms. Roberson under a loan agreement and that he converted certain stock owned by Plaintiffs. On August 13, 2009, Plaintiffs filed their Complaint against Defendant, asserting claims for Conversion, Fraud, Imposition of Constructive Trust, Breach of Contract, Breach of the Implied Duties of Good Faith and Fair Dealing, Accounting, and Tortious Concealment. *See* Complaint [Doc. 1].

Until August 23, 2009, Defendant served as the Chairman of the Board of Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), a Florida corporation. TBW was a mortgage lender and servicer and was allegedly among the top ten wholesale lenders in the United States, servicing a portfolio exceeding $65 billion. In August 2009, TBW filed for bankruptcy. Since the time Plaintiffs brought this action, Defendant has been indicted in federal court for conspiracy, bank fraud, wire fraud, and securities fraud.[2] His assets have been frozen by the Securities and Exchange Commission,[3] and he has been sued by the Unsecured Creditors Committee in the TBW bankruptcy proceeding.[4]

According to Plaintiffs, Ms. Roberson invested in TBW in the company's infancy by

---

[2] *See United States v. Lee Bentley Farkas*, 10-cr-200 (E.D. Va).

[3] *See Securities and Exchange Commission v. Lee B. Farkas*, 10-cv-667 (E.D. Va).

[4] *See In re: Taylor, Bean & Whitaker Mortgage Corp.*, 09-bk-07047 (M.D. Fla.).

purchasing a certain amount of TBW stock from 1992 through 1996.[5] Additionally, in 1994, Ms. Roberson allegedly loaned $100,000 to TBW in exchange for a percentage of TBW's future loans. It is these stock purchases and the loan agreement that form the basis for Plaintiffs' cause of action against Defendant.

Plaintiffs filed their Complaint on August 13, 2009. Plaintiffs allegedly tried unsuccessfully to serve Defendant with process on six different occasions between August 21 and August 26. Plaintiffs then retained the services of an additional process server, Chris Stevens, a former employee of TBW who had worked closely with Defendant until June 2009. *See Affidavit of Service by Chris Stevens* [Doc. 6]. Chris Stevens allegedly served Defendant with process on August 28, 2009. *See id*. Although Defendant now denies that service on that date was proper, as will be discussed later in this opinion, Defendant sent a text message on that date to Coda Roberson, saying "Got served by your process server today. Thanks very much." *See Affidavit of Coda Roberson III* [Doc. 7]. Defendant has not denied sending this message. Plaintiffs then mailed copies of the Summons and Complaint by Certified Mail/Return Receipt Requested to Defendant's residence and his place of business. *See Affidavit of Cynthia H. Bacon* [Doc. 8]. On September 14, 2009, the certified mail return receipt for the copy of the Summons and Complaint that was mailed to Defendant's place of business was signed for. *See id*. Ex. E. Although Defendant now denies that the signature on the receipt is his, the same day on which the receipt was signed, he sent another text message to Coda Roberson. This message said: "Ok, Coda. I just got served AGAIN in this frivolous lawsuit of yours. I will defend myself. Hiring counsel

---

[5] The predecessor corporation to Taylor, Bean & Whitaker Mortgage Corp. appears to have been named TBW, Inc. Although Ms. Roberson may have owned stock in both the predecessor and successor entities, for ease the Court will refer to her holdings in both entities as simply holdings in TBW.

today.  You and your brother will be the ultimate losers.  I promise." *See Second Affidavit of Coda Roberson III*, attached as Ex. 4 to Doc. 28.  Defendant has not denied sending this message.

Despite acknowledging receipt of service on two occasions, and despite having indicated an intention to retain counsel, Defendant did not file any response to the Complaint in the coming weeks.  On September 21, 2009, Plaintiffs filed a *Motion for Entry of Default Pursuant to Rule 55(a)*, referencing a previously filed Praecipe and all necessary supporting affidavits.  *See* Doc. 12.  On October 6, 2009, thirty-nine days after Defendant first acknowledged service, and twenty-two days after he next acknowledged service, the Clerk of Court entered Defendant's default.  *See* Doc. 19.  On October 9, 2009, Defendant filed his *Motion to Set Aside Clerk's Entry of Default* [Doc. 23].  In that motion, Defendant argues that good cause exists to set aside the default because he had no obligation to defend the case because of Plaintiffs' failure to properly serve him, and also that default is improper because he has a meritorious defense to Plaintiff's claims, namely that this Court lacks personal jurisdiction over him.  Defendant's motion was fully briefed on December 15, 2009.  *See* Doc. 42.  On October 23, 2009, Defendant filed a *Motion to Dismiss Based on Lack of Personal Jurisdiction* [Doc. 24].  On February 5, 2010, Plaintiffs filed a *Motion for Entry of Default Judgment as to Liability* [Doc. 43].  This motion, which, as a practical matter, is the flip-side to Defendant's motion to set aside the Clerk's entry of default, argues that a default judgment should be entered because no good cause exists to set aside the Clerk's entry of default.  On June 30, 2009, the Court entered a Memorandum Opinion and Order denying Defendant's motion to dismiss on personal jurisdiction grounds [Doc. 58], thereby eliminating the sole defense Defendant had identified as meritorious in his motion to set aside the Clerk's entry of default.

## ANALYSIS

Once default has been entered by the Clerk of Court pursuant to Fed. R. Civ. P. 55(a), the Court may set aside this entry for "good cause." Fed. R. Civ. P. 55(c). The good cause required by Rule 55(c) for setting aside an entry of default is less than the excusable neglect that must be shown for relief from a judgment of default under Rule 60(b). *See Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997). The Court generally examines three factors to determine whether to set aside an entry of default: (1) whether the moving party's culpable conduct caused the default; (2) whether the moving party has a meritorious defense; and (3) whether the non-moving party will be prejudiced if the default is set aside. *See Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 183 (5th Cir. 1992).[6] The Court is not required to consider all of these factors, and may consider other factors as well, if merited. *See id.* However, even if a defendant has a meritorious defense and no prejudice to the adversary would result from setting aside the entry of default, "[w]illful failure alone may constitute sufficient cause for the court to deny th[e] motion." *Id*. Generally, a defendant's conduct is considered culpable if he has defaulted willfully or has no excuse for the default. *See United States v. Timbers*, 999 F.2d 452, 454 (10th Cir. 1993).

A. Defendant's Culpable Conduct

Defendant acted willfully and without excuse in failing to respond to Plaintiff's Complaint prior to entry of default. Although his counsel attempted to make a special entry of appearance (in violation of D.N.M. LR-Civ. 83.4(c)) just prior to entry of default, *see* Docs. 17 and 18,

---

[6] Although the Tenth Circuit has no published opinions adopting this three-factor test with respect to a Rule 55(c) analysis, it has relied on the *Dierschke* analysis as stating the law in at least three unpublished cases. *See Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x. 744, 750 (10th Cir. 2009); *Guttman v. Silverberg*, 167 Fed. App'x. 1, 4 (10th Cir. 2005), *cert. denied*, 547 U.S. 1112 (2006); *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 U.S. App. LEXIS 24463 at *9 (10th Cir. Aug. 29, 1995).

Defendant failed to answer or otherwise respond, nor did he move for an extension of time to respond. Defendant's allegations that he failed to respond because he was improperly served are without merit.

Plaintiffs' first process server initially attempted to serve Defendant at his home and place of business for six days, only to be turned away numerous times. *See Affidavit of Non-Service*, attached as Ex. 3 to Doc. 28. Plaintiffs then hired Chris Stevens, who had worked with Defendant until June 2009, as their new process server. *See* Doc. 6 at ¶ 3. On August 28, 2009, Mr. Stevens went to TBW's corporate headquarters, observed a vehicle parked in the spot that he knew, from personal experience, belonged to Defendant, and entered the building. *Id*. at ¶ 6. Mr. Stevens explained to security guards at the front door that he needed to serve Defendant with a copy of the Complaint and Summons, but was told that, although Defendant was in the building, Mr. Stevens would not be allowed into the building. *Id*. at ¶ 7. Mr. Stevens was told by the security guard to go to the back of the building where Jeffrey Young, TBW's Security Manager, was located. Mr. Young confirmed that Defendant was in the building, but said that he was not accepting visitors. He specifically asked whether Mr. Stevens' service was something that he could convey to Defendant. *See Affidavit of Jeffrey Young*, attached as Ex. 1 to Doc. 23, at ¶ 5.[7] Mr. Stevens confirmed that Mr. Young could convey service to Defendant as long as Mr. Young signed the return of service, which he did. *See id*.

Later that day, Mr. Stevens subsequently returned to Defendant's place of business to

---

[7] Mr. Stevens maintains that Mr. Young told him that he was specifically authorized to accept service of process on Defendant's behalf as his lawful agent. *See Affidavit of Chris Stevens* [Doc. 6] at ¶ 8. Mr. Young denies that he told Mr. Stevens that he was authorized to accept service of process on Defendant's behalf, but he acknowledges that he asked whether the service was something that he could convey to Defendant. *See Affidavit of Jeffrey Young*, attached as Ex. 1 to Doc. 23, at ¶ 5.

request that Defendant sign the return of service as well.  Mr. Young acknowledged that Defendant was still in the building, but said that Defendant refused to accept service and refused to sign the return of service.  *See* Doc. 6 at ¶ 10.  Mr. Stevens gave Mr. Young a copy of the Summons and Complaint.  *See id*.  Mr. Young took the Summons and Complaint to Defendant and, when he returned, acknowledged that Defendant had personally received the Summons and Complaint and had shredded both of them.  *Id.*[8]  Later that day, after having personally received the Summons and Complaint, Defendant sent a text message to Coda Roberson acknowledging service.  *See* Doc. 7 at ¶¶ 3-4.

In addition to having left a copy of the Summons and Complaint with Defendant, thereby satisfying service under Fed. R. Civ. P. 4(e)(2)(A), Plaintiffs then mailed copies of the Summons and Complaint by Certified Mail/Return Receipt Requested, addressed to Defendant, to Defendant's residence and his place of business.  *See Affidavit of Cynthia H. Bacon* [Doc. 8].  Fed. R. Civ. P. 4(e)(1) provides that service may be effected by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Under NMRA 1-004(F)(1)(b), personal service may be made on an individual "by mail or commercial courier service as provided in" Rule 1-004(E)(3), which in turn requires that the envelope be "addressed to the named defendant and...that the

---

[8] Mr. Young does not deny or dispute any of these events in his affidavit.  Defendant has denied that he told Mr. Young that he refused to accept service or sign the return of service.  *See Affidavit of Lee B. Farkas*, attached as Ex. A. to Doc. 39, at ¶ 11.  Defendant has also denied that he told Mr. Young that he shredded the Complaint and Summons.  *Id*.  This is a far cry from denying that he actually did refuse to sign the return of service or that he did shred the documents.  Mr. Stevens' affidavit says that Mr. Young told him that Defendant had refused to sign the return of service and had shredded the documents, implying that these were physical events that Mr. Young had actually witnessed.  Defendant's assertion that he did not *tell* Mr. Young that he had refused or had shredded the documents is of no import.

defendant or a person authorized by appointment, by law or by this rule to accept service of process upon the defendant signs a receipt for the envelope." Service under this provision is complete on the date the receipt is signed. NMRA 1-004(E)(3). On September 14, 2009, the certified mail return receipt for the copy of the Summons and Complaint that was mailed to Defendant's place of business was signed for. *See id*. Ex. E. Although Defendant now contends that he did not sign the receipt, *see* Ex. 1 attached to Doc. 39 at ¶ 3, the same day the receipt was signed, Defendant again acknowledged service and indicated his plans to retain counsel. *See Second Affidavit of Coda Roberson III*, attached as Ex. 4 to Doc. 28.

Defendant's argument that he could refuse to respond to Plaintiffs' Complaint because of improper service is without merit. Defendant twice acknowledged receiving service. Even if there was some small flaw in the manner of service, as a general matter "federal courts...take a permissive attitude towards the mechanism employed for service of process when the defendant actually receives notice." *Kitchens v. Bryan Cty. Nat'l Bank*, 825 F.2d 248, 255-56 (finding proper service because it "complied with the spirit, if not the letter" of Fed. R. Civ. P. 4, and the defendant had notice of the action). Defendants ignore lawsuits of which they have actual notice at their peril. Defendant has offered no facts to suggest that he had good cause for failing to appear prior to the entry of default. His culpable conduct caused the entry of default, and on this basis alone the Court could enter a default judgment.

    B. <u>Lack of Meritorious Defense</u>

Defendant has also failed to come forward with a meritorious defense to Plaintiffs' action. In his *Motion to Set Aside Clerk's Entry of Default* [Doc. 23], the only defense Defendant claims is that this Court lacks personal jurisdiction against him, a claim that has since been denied. In his Reply to his motion [Doc. 39], Defendant, for the first time, makes a brief argument that

Plaintiffs' action is barred by New Mexico's statute of limitations and that the action has not been pled with the requisite specificity. *Id.* at 9-11. However, arguments not raised in an opening brief are deemed waived. *See Silverton Snowmobile Club v. U.S. Forest Service*, 433 F.3d 772, 783 (10th Cir. 2006); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998). Any argument concerning the statute of limitations or adequacy of pleading was available to Defendant when he filed his initial brief, but he failed to include them.

Tellingly, Defendant again failed to include these arguments in later briefing. Defendant's only mention of these arguments was in his Reply brief, filed December 15, 2009. Yet, when Defendant filed a brief in response to Plaintiffs' *Motion for Entry of Default Judgment on Liability* on February 16, 2010 [Doc. 44], he again rested only on his since-discredited personal jurisdiction argument. It was not until after the Court denied his personal jurisdiction argument, nearly nine months after filing his initial brief and seven months after the completion of briefing on his motion to set aside the Clerk's entry of default, that Defendant again tried to raise the statute of limitations as a "meritorious defense" through filing his Amended Motion [Doc. 59]. By deliberately not raising this potential defense when he had the information necessary to raise it, Defendant has waived it. Thus, he cannot demonstrate that he has a meritorious defense to Plaintiffs' claims.

C. Prejudice to Plaintiffs

Finally, Plaintiffs are likely to suffer prejudice if the Court sets aside the Clerk's entry of default. Prejudice, in this context, does not mean the difficulty that would ensue from Plaintiffs now having to win their case on the merits. Instead, it means that the delay that a failure to enter default judgment would entail would be likely to result in loss of evidence, increased difficulties in discovery, or greater difficulty in recovery of a judgment. *See Berthelsen v. Kane,* 907 F.2d

617, 621 (6th Cir. 1990).  In this case, due to an order by the presiding Magistrate Judge, discovery on damages is now complete.  *See* Doc. 55.  Nonetheless, given the significant criminal charges pending against Defendant and the myriad civil suits in which he is embroiled, as well as the fact that his assets have been frozen by the Securities and Exchange Commission, the Court finds that the likelihood of a meaningful recovery is apt to become less as time goes on, and finds that this factor weighs in favor of entering default judgment as well.

## CONCLUSION

To be sure, default judgments are disfavored, and the preferred disposition of any case is upon its merits.  *See Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). Nonetheless, Defendant's contumacious conduct and apparent deliberate disregard of his obligations in this case make default judgment appropriate.  **IT IS THEREFORE ORDERED** that Defendant's *Motion to Set Aside Clerk's Entry of Default* [Doc. 23] is DENIED and that Plaintiffs' *Motion for Entry of Default Judgment on Liability* [Doc. 43] is GRANTED.  The Court will schedule a hearing on damages at a later time.

_____
**UNITED STATES DISTRICT JUDGE**