IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROBBY ROBERSON, Personal
Representative of the ESTATE OF
DOROTHY M. ROBERSON, a Citizen of
the State of New Mexico, and
ROB-O-CO, Inc., a New Mexico
Corporation,
                **Plaintiffs,**

v.                                         Civ. No. 09-795 JCH/WDS

LEE B. FARKAS, a Citizen of the State of
Florida,
                **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's *Motion for Continuance* [Doc. 74], Defendant's *Motion to Vacate and Set Aside Clerk's Entry of Default and Entry of Default Judgment as to Liability* [Doc. 94], Plaintiffs' *Motion to Strike Defendant Farkas' Motion to Set Aside Clerk's Entry of Default and Entry of Default Judgment as to Liability and Request for Sanctions* [Doc. 95], and Defendant's *Motion to Strike Plaintiffs' Notice of Completion of Briefing* [Doc. 104]. The Court having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendant's motion for continuance should be DENIED as moot, that Defendant's motion to set aside entry of default should be GRANTED, that Plaintiffs' motion to strike Defendant's motion to set aside entry of default should be DENIED, and that Defendant's motion to strike Plaintiffs' notice of completion of briefing should be DENIED as moot.

.

## BACKGROUND

This case has been contentious from the outset and has spawned a tangled procedural history to this point. It arises from a long-standing business and personal relationship between Defendant and the late Dorothy Roberson. Plaintiff Robby Roberson is the Personal Representative of the Estate of Dorothy Roberson. During her lifetime, Ms. Roberson was the sole shareholder of Plaintiff ROB-O-CO, Inc. ("ROC"). Her estate is now ROC's sole shareholder. Plaintiffs contend that Defendant failed to honor his guarantee of payment obligations owed to Ms. Roberson under a loan agreement and that he converted certain stock owned by Plaintiffs.

Until August 23, 2009, Defendant served as the Chairman of the Board of Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), a Florida corporation. TBW was a mortgage lender and servicer and was allegedly among the top ten wholesale lenders in the United States, servicing a portfolio exceeding $65 billion. In August 2009, TBW filed for bankruptcy.

According to Plaintiffs, Ms. Roberson invested in TBW in the company's infancy by purchasing a certain amount of TBW stock from 1992 through 1996.[1] Additionally, in 1994, Ms. Roberson allegedly loaned $100,000 to TBW in exchange for a percentage of TBW's future loans. It is these stock purchases and the loan agreement that form the basis for Plaintiffs' cause of action against Defendant. Plaintiffs' Complaint asserts claims for Conversion, Fraud, Imposition of Constructive Trust, Breach of Contract, Breach of the Implied Duties of Good Faith and Fair Dealing, Accounting, and Tortious Concealment. *See* Complaint [Doc. 1].

---

[1] The predecessor corporation to Taylor, Bean & Whitaker Mortgage Corp. appears to have been named TBW, Inc. Although Ms. Roberson may have owned stock in both the predecessor and successor entities, for ease the Court will refer to her holdings in both entities as simply holdings in TBW.

Plaintiffs filed their Complaint on August 13, 2009. *Id*. Plaintiffs allegedly tried unsuccessfully to serve Defendant with process on six different occasions between August 21 and August 26. Plaintiffs then retained the services of an additional process server who allegedly served Defendant with process on August 28, 2009. *See Affidavit of Service by Chris Stevens* [Doc. 6]. Defendant has denied throughout these proceedings that this attempt at service was successful. Nonetheless, Defendant sent a text message on that date to Plaintiff Robby Roberson's brother, Coda, saying "Got served by your process server today. Thanks very much." *Affidavit of Coda Roberson III* [Doc. 7]. Defendant has not denied sending this message. Plaintiffs also mailed copies of the Summons and Complaint by Certified Mail/Return Receipt Requested to Defendant's residence and his alleged place of business. *See Affidavit of Cynthia H. Bacon* [Doc. 8]. On September 14, 2009, the certified mail return receipt for the copy of the Summons and Complaint that was mailed to Defendant's alleged place of business was signed for. *See id*. Ex. E. Although Defendant denies that the signature on the receipt was his, the same day on which the receipt was signed, he sent another text message to Coda Roberson. This message said: "Ok, Coda. I just got served AGAIN in this frivolous lawsuit of yours. I will defend myself. Hiring counsel today. You and your brother will be the ultimate losers. I promise." *See Second Affidavit of Coda Roberson III*, attached as Ex. 4 to Doc. 28. Defendant has not denied sending this message.

Despite acknowledging receipt of service on two occasions, and despite having indicated an intention to retain counsel, Defendant did not file any response to the Complaint in the coming weeks. On September 21, 2009, Plaintiffs filed a *Motion for Entry of Default Pursuant to Rule 55(a)*, referencing a previously filed Praecipe and all necessary supporting affidavits. *See* Doc. 12. On September 30, 2009, and again on October 5, 2009, Defendant's counsel attempted to

3

make a "special entry of appearance," and indicated Defendant's intent to contest service of process and personal jurisdiction.  *See* Docs. 17, 18.  As the Court explained in granting Plaintiffs' *Motion to Strike Special Entries of Appearance* [Doc. 21], the distinction between special and general entries of appearance has been abolished.  *See* Doc. 64.  The Court therefore construed the attempted special entry of appearance as a general entry of appearance, effective on September 30, 2009.  *See id*.  Despite this entry of appearance, Defendant still did not file a responsive pleading.  On October 6, 2009 the Clerk of Court entered Defendant's default.  *See* Doc. 19.

Quickly thereafter, on October 9, 2009, Defendant filed a *Motion to Set Aside Clerk's Entry of Default* [Doc. 23].  In that motion, Defendant argued that good cause existed to set aside the default because he had no obligation to defend the case as a result of Plaintiffs' failure to properly serve him and also because this Court allegedly lacked personal jurisdiction over him.  On October 23, 2009, Defendant filed a *Motion to Dismiss Based on Lack of Personal Jurisdiction* [Doc. 24], which the Court denied in a Memorandum Opinion and Order issued on June 30, 2010 [Doc. 58].  On February 5, 2010, Plaintiffs filed a *Motion for Entry of Default Judgment as to Liability* [Doc. 43], arguing that a default judgment should be entered because no good cause exists to set aside the Clerk's entry of default.  While these motions were pending, the Magistrate Judge on this case granted Plaintiffs' *Motion for Expedited Post-Default Discovery* [Doc. 20].  See Doc. 50.

On September 24, 2010, this Court entered a Memorandum Opinion and Order [Doc. 66] granting Plaintiffs' *Motion for Entry of Default Judgment on Liability* [Doc. 43] and denying Defendant's *Motion to Set Aside Clerk's Entry of Default* [Doc. 23].  This Memorandum Opinion and Order held that Defendant had not demonstrated good cause to set aside the entry of default,

finding that Defendant was culpable for causing the default by failing to respond after having received proper service and that Defendant had failed to come forward with a meritorious defense to Plaintiffs' action because he raised a statute of limitations defense too late.  *See* Doc. 66. Having denied the motion to set aside the entry of default, the Court scheduled a hearing on damages.  The Court initially scheduled the damages hearing for November 29, 2010, and ultimately moved the hearing to January 18, 2011.  On January 6, 2011, Plaintiffs submitted a trial brief in advance of the scheduled damages hearing.  *See* Doc. 93.  Plaintiffs' brief quantified, for the first time to the Court's knowledge, the amount of damages they were claiming.  Plaintiffs claimed entitlement to compensatory damages, punitive damages, and pre-judgment interest in an amount exceeding $156 million, plus post-judgment interest.  *See* Doc. 93 at 13-14.

The following day, Defendant filed a motion to set aside the Clerk's entry of default and the Court's entry of default as to liability [Doc. 94].  On January 10, 2011, Plaintiffs filed a motion seeking to strike this motion on the grounds that it was the fourth request for the same relief that had been denied earlier.  *See* Doc. 95.  Plaintiffs' motion also sought sanctions on the grounds that Defendant's new motion was an attempt to multiply the proceedings unreasonably and vexatiously.  *Id*.  On January 13, 2011, the Court held a telephonic status conference in advance of the damages hearing.  At this hearing, the Court indicated that it intended to deny Plaintiffs' motion to strike Defendant's motion to set aside entry of default, and indicated that it wanted the motion to vacate default to be fully briefed because it raised issues that merited full review.  *See* Hearing Transcript, attached as Ex. 1 to Doc. 104, at 9-10.  The Court then vacated the damages hearing, pending decision on the motion to set aside entry of default.  *See* Doc. 98.

Hanging over this case from the beginning has been Defendant's involvement in unrelated criminal and civil matters.  In June, 2010, Defendant was indicted in federal court for conspiracy,

5

bank fraud, wire fraud, and securities fraud.[2]  His assets were frozen by the Securities and Exchange Commission,[3] and he was sued by the Unsecured Creditors Committee in the TBW bankruptcy proceeding.[4]  Following an April, 2011 trial, Defendant was convicted on 14 of the 16 counts against him, and, on June 30, 2011, was sentenced to a term of 360 months in prison.  *See* Doc. 114.  He was also ordered to forfeit approximately $38.5 million to the United States Government.  *Id.*

## ANALYSIS

1.      Defendant's Motion to Vacate [Doc. 94].

The Court must first determine what standard it should apply to evaluating its earlier decisions that Defendant challenges in this motion. Contrary to Plaintiffs' assertions, Defendant's motion is not simply a restatement of his initial arguments, but more in the nature of a motion to reconsider, making specific arguments in response to the Court's ruling and validly attempting to raise issues that he contends are clear error.  Plaintiffs argue that the Court should address the motion for reconsideration using the comparatively strict standard of Fed. R.Civ. P. 60(b), whereas Defendant contends that the more lenient Fed. R. Civ. P. 55(c) provides the proper standard to apply.

Rule 60(b) only applies to review of final judgments.  *See Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003).  A court may amend an interlocutory order at

---

[2] *See United States v. Lee Bentley Farkas*, Case No. 10-cr-200 (E.D. Va).

[3] *See Securities and Exchange Commission v. Lee B. Farkas*, Case No.10-cv-667 (E.D. Va).

[4] *See In re: Taylor, Bean & Whitaker Mortgage Corp.*, Case No. 09-bk-07047 (M.D. Fla.).

any time prior to the filing of a final judgment.  *See Hunt v. Green*, 376 F. Supp. 2d 1043, 1050 (D. N.M. 2005) (listing cases from throughout this District).  Although the Court's Memorandum Opinion and Order of September 24, 2010 granted Plaintiffs' motion for default judgment on liability, it did not constitute a final judgment, because the issue of damages remained to be decided.  *See Swarna v. Al-Awadi*, 622 F.3d 123, 140 (2d Cir. 2010) (because it expressly left unresolved the issue of damages, "the District Court's order, though styled a default judgment, was a non-final order); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993) ("default judgment cannot be entered until the amount of damages has been ascertained"); *Hinson v. Webster Indus*, 240 F.R.D. 687, 691-92 (M.D. Ala. 2007) (because "the court has not yet made an assessment of damages, " but rather "has only entered a default judgment on the issue of liability," the default judgment on the issue of liability is not a final judgment and "Rule 55(c)'s 'good cause' standard governs the determination of whether to set aside the default judgment entered in this case.").  *See also Clawson et al. v. Southwest Cardiology Assoc., P.A., et al.*, No. CIV 99-379 MV/RLP (D. N.M. June 21, 2000) (noting that, although it had entered a judgment of default, there was no final judgment for purposes of Rule 60(b) until the amount of damages has been determined).  Thus, while the Court may have inadvertently caused confusion by entering an order of default judgment on liability prior to a determination of damages, this was an interlocutory order, and it is subject to revision based on an analysis using the standards of Rule 55(c).[5]

---

[5] In its earlier Memorandum Opinion and Order, the Court characterized Plaintiffs' motion for entry of default judgment on liability by indicating that "as a practical matter, [it] is the flip-side to Defendant's motion to set aside the Clerk's entry of default." Doc. 66 at 4.  Thus, the Court viewed granting Plaintiffs' motion as having the same effect as denying a motion to set aside an entry of default–it was not intended to create a final judgment.

Under Rule 55(c), a court may set aside an entry of default "for good cause." Fed. R. Civ. P. 55(c).[6] The good cause required by Rule 55(c) for setting aside an entry of default is less than the excusable neglect that must be shown for relief from a judgment of default under Rule 60(b). *See Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997). It is well established that "[t]he preferred disposition of any case is upon its merits and not by default judgment" although "this judicial preference is counterbalanced by considerations of social goals, justice, and expediency." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). Ultimately, the factors a court considers should be liberally applied in favor of setting aside the entry of default to allow a determination on the merits. *See Enron Oil Corp.*, 10 F.3d. at 97 ("because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, 'good cause'...should be construed generously").

Courts generally examine three factors to determine whether to set aside an entry of default: (1) whether the moving party's culpable conduct caused the default; (2) whether the moving party has a meritorious defense; and (3) whether the non-moving party will be prejudiced if the default is set aside. *See Dierschke v. O'Cheskey (In re Dierschke)*, 975 F.2d 181, 183 (5th Cir. 1992).[7] The Court is not required to consider all of these factors, and may consider other

---

[6] Rule 55(c) also indicates that the court may set aside a default judgment under Rule 60(b). However, because, as discussed above, the Court's entry of default on liability did not constitute a final judgment, it was not the type of default judgment subject to Rule 60(b) that is referenced in Rule 55(c). *See, e.g., Fed. Deposit Ins. Corp. v. Francisco Inv. Corp.*, 873 F.2d 474, 478 (1st Cir. 1989) (although a "cursory reading" of Rule 55(c) "seems to mandate the application of the stricter standards of Rule 60(b) to all requests to set aside default judgments," Rule 60(b)'s standards "were tailored for setting aside *final* judgments.") (emphasis in original).

[7] Although the Tenth Circuit has no published opinions adopting this three-factor test with respect to a Rule 55(c) analysis, it has relied on the *Dierschke* analysis as stating the law in

factors as well, if merited. *See id.* One of the other factors that courts have considered, and that is quite relevant to this case, is whether the dispute involves a substantial amount of money. *See Enron Oil Corp.*, 10 F.3d at 97 (defaults are particularly disfavored when substantial sums are demanded); *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (listing sum of money at stake as a factor to consider and affirming denial a motion for default in part because plaintiff sought almost $3 million). *See also 10 James Wm. Moore et al. Moore's Federal Practice* ¶ 55.31[2] (3d. ed. 2011) (listing the sum of money at stake as a factor to consider when determining whether to set aside an entry of default or default judgment). In this case, when the Court entered its initial decision denying Defendant's motion to set aside the Clerk's entry of default and granting Plaintiffs' motion for default judgment on liability, Plaintiffs had not quantified their demand for damages, and the Court had no inkling that such substantial damages were involved. The amount of damages alone gives the Court great pause about the propriety of entering default in this case.

In addition, the Court should have given more consideration to Defendant's proffered defense that Plaintiffs' claims relating to stock transactions and contracts entered into between 15 and 20 years ago were not brought within the applicable statutes of limitations. When evaluating the factor of whether the defendant has put forth a meritorious defense for purposes of determining whether to set aside entry of default, rather than looking at the likelihood that the defendant will prevail on the merits, the Court should look at whether the proposed defense is legally cognizable such that it would constitute a defense to the claims if proved at trial. *See*

---

at least three unpublished cases. *See Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x. 744, 750 (10th Cir. 2009); *Guttman v. Silverberg*, 167 Fed. App'x. 1, 4 (10th Cir. 2005), *cert. denied*, 547 U.S. 1112 (2006); *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 U.S. App. LEXIS 24463 at *9 (10th Cir. Aug. 29, 1995).

*Enron Oil Corp.*, 10 F.3d at 98; *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (allegations of a defense are meritorious if they contain "even a hint of a suggestion" that, if proven at trial, would constitute a complete defense). Defendant's proffered statute of limitations defense is more than a mere denial or conclusory allegation; it sets forth specific facts and theories that, if proven at a trial on the merits, could establish a complete defense. Thus, although Defendant did not raise this defense as expeditiously or as prominently as he could have, he raised it sufficiently such that the Court feels it must set aside the entry of default. Simply put, the Court is deeply concerned about entering default in a case with over $156 million at stake when Defendant has raised real doubts about the viability of Plaintiffs' claims.

Further, in determining whether the defendant's conduct that caused a default should be considered culpable, the Court should determine whether the defendant defaulted willfully or had no excuse for the default. *See United States v. Timbers*, 999 F.2d 452, 454 (10th Cir. 1993). Although the Court maintains that defendants ignore lawsuits of which they have actual notice at their peril, Defendant has demonstrated at least a colorable argument that he was not properly served. Moreover, Defendant sought to enter an appearance prior to the Clerk's entry of default, and he acted promptly to set aside the entry of default. Under the circumstances, the Court cannot say that Defendant's default was willful, and the entry of default should be vacated.[8]

---

[8] The Court is left with enough concerns about the propriety of default in this situation that it would be compelled to vacate the entry of default even if it came at a regrettable prejudice to Plaintiffs. However, in this case, there is no indication that the prejudice is substantial. Even if default were not set aside, Plaintiffs would still have to prove damages and attempt to collect a judgment. Because Defendant is incarcerated for such a long term, and because of the amount of funds he has already had to forfeit, it is likely that Plaintiffs will face a substantial barrier to recovery even if they can prove the damages to which they are entitled. It is not clear that proving their case on the merits, which Plaintiffs will have to do now if the Court vacates the

  2. <u>Other Motions</u> [Docs. 74, 95, and 104].

When the Court initially refused to set aside the entry of default and set a damages hearing for November 29, 2010, Defendant moved to continue this hearing pending completion of his criminal trial. *See* Doc. 74. Although the Court never formally ruled on this motion, the scheduled damages hearing was postponed twice, and then vacated indefinitely. Now that the Court is vacating the entry of default, there will be no damages hearing, so that this motion is moot.

Following the filing of Defendant's motion to reconsider [Doc. 94], Plaintiffs filed a motion to strike Defendant's motion and to request sanctions, arguing that the motion was improper and that it multiplied the proceedings unreasonably and vexatiously. *See* Doc. 95. At a status conference after these two motions were filed, the Court indicated that it intended to deny Plaintiffs' motion to strike, and indicated that it wanted the motion to vacate the entry of default to be fully briefed because it raised issues that merited full review. *See* Hearing Transcript, attached as Ex. 1 to Doc. 104, at 9-10. Therefore, Defendant understandably did not respond to Plaintiffs' motion to strike. Thus, when Plaintiffs filed a Notice of Completion of Briefing on their motion to strike [Doc. 101], Defendant filed a motion to have the notice stricken, arguing that he did not respond because he understood that the Court intended to deny Plaintiffs' motion, not because he did not contest the motion. *See* Doc. 104. As the Court indicated at the status hearing, Defendant's motion to reconsider is not improper. While the Court did not formally deny Plaintiffs' motion to strike at the status hearing, it will do so now. Because it denies Plaintiffs' motion to strike, Defendant's motion to strike Plaintiffs' notice of completion of

---

entry of default, will be substantially more difficult than it would have been before, especially given the discovery that has already occurred.

briefing is moot.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Continuance* [Doc. 74] is DENIED as moot, Defendant's *Motion to Vacate and Set Aside Clerk's Entry of Default and Entry of Default Judgment as to Liability* [Doc. 94] is GRANTED, Plaintiffs' *Motion to Strike Defendant Farkas' Motion to Set Aside Clerk's Entry of Default and Entry of Default Judgment as to Liability and Request for Sanctions* [Doc. 95] is DENIED, and Defendant's *Motion to Strike Plaintiff's Notice of Completion of Briefing* [Doc. 104] is DENIED as moot.

_____
UNITED STATES DISTRICT JUDGE